WILLIAM CLARK *versus* HENRY MUNYAN *et al.*

A deed of wild land described it, as bounded "westerly on the county road, norther-ly and southerly on land owned by E., and running easterly to Sheldon's corner, and containing twelve acres and a half, more or less." It being proved, that Shel-don's corner was at the easterly termination of the southerly line, it was *held*, that the northerly line must also be deemed to extend as far east as Sheldon's corner, although the lot would thereby be bounded on the north, in part, by the land of H., which was not mentioned in the deed, and although the contents of the lot would, in such case, exceed thirty-nine acres.

Parol evidence that the grantor, soon after the conveyance, ran out the easterly line and marked the trees on it, and that the grantees cut trees up to such line, was *held* to be admissible, in aid of the construction of the deed.

TRESPASS *quare clausum* and *de bonis asportatis.*

The declaration described the close as abutting, towards the south, on the land of Solomon Pomeroy ; towards the west, on land belonging to the heirs of Nathaniel Edwards, deceased ; towards the north, on the land of Ebenezer Hunt, deceased · towards the east, on the land of the plaintiff and others.*

The trial was before *Putnam* J.

The plaintiff proved that the defendants cut trees up to the easterly line of the *locus.*

---

* The following diagram represents the land with sufficient accuracy for illustration.

The defence was, that the plaintiff had granted the *locus*, of which he was originally the owner, together with other land between that and the county road, to William Edwards, who conveyed the same to Nathaniel Edwards, it being admitted that the defendants had all the right and title granted by the plaintiff to W. Edwards.

The defendants produced a deed from the plaintiff to W. Edwards, dated on the 26th of April, 1811, wherein the premises conveyed were described as follows : " Westerly, on the county road leading from Nathaniel Edwards's to Southampton ; northerly and southerly on land owned by Nathaniel Edwards ; and *running easterly to Sheldon's corner*, so called, on the lot of which the premises are a part, containing twelve acres and a half, more or less." They also produced a deed from W. Edwards to N. Edwards, dated in June, 1811, which was to the same effect.

The defendants proved what they called three monuments referred to in the deed from the plaintiff to W. Edwards, to wit, the county road, the southerly line of N. Edwards's north lot, and Sheldon's corner, where there was a heap of stones on a flat rock ; and they relied on the declaration of the plaintiff in that deed, that N. Edwards owned the land south of the premises. No evidence was given, on either side, tending to prove who was the owner of the land south of the premises at the time when the deed was executed.

The defendants also offered evidence tending to prove that N. Edwards, soon after the conveyance to him, cleared and fenced the front part of the granted premises on the county road, and cut trees standing promiscuously on the *locus*, near to the easterly line thereof, for the purpose of building a house.

The plaintiff contended, that the deed from him to W. Edwards was void for uncertainty, inasmuch as the defendants had proved only three out of the four boundaries referred to therein, and one of these, to wit, the northerly line, was not proved to extend easterly, according to the claim of the defendants, as far as the southeast corner of Hunt's land, but only as far as the southwest corner thereof. The plaintiff further contended, that if such deed was not void for uncertainty, it did not convey any part of the *locus*, the deed making no mention of

Hunt's land as being one of the northerly boundaries of the land conveyed.

It was further proved, that the whole quantity of land alleged by the defendants to have been conveyed by the plaintiff to W. Edwards, amounted to between thirty-nine and forty acres; and the plaintiff thereupon contended, that it would be competent for the jury to draw a diagonal line from the northerly line at its intersection with the county road to Sheldon's corner, or from the southwest corner of Hunt's land, to Sheldon's corner, and that thus the three boundaries proved would be established, and yet a large part of the *locus* would remain not conveyed.

It was also testified, that the plaintiff declared, that he did not know where Sheldon's corner was, and that he did not mean to go further towards the east than Hunt's land. But the testimony of the same witness tended to prove, that prior to 1818, the plaintiff ran out a line northerly from Sheldon's corner and marked the trees.

The whole of the *locus* and the adjoining lots of Edwards and Hunt, were wild land.

The judge instructed the jury, that a deed would not be void merely from a mistake in omitting one of the owners of land upon which the premises intended to be conveyed abutted, that fixed and well known monuments should control and govern in such case, and that the deed in question was not void for uncertainty; and he left it to the jury to ascertain, whether it was the intent of the parties to the deed to include the *locus* in the conveyance.

The jury found specially, that the defendants had such a right to the soil and freehold of the *locus* as they claimed.

If there was any error in the instructions to the jury, the verdict was to be set aside, and a new trial granted; otherwise judgment was to be rendered for the defendants upon the verdict.

*Sept.* 23*d*     *Forbes*, for the plaintiff, to the point, that the construction of deeds was not invariably governed by the monuments referred to therein, but was, under certain circumstances, controlled by the courses, or by the contents of the land purported to be conveyed, cited *Davis* v. *Rainsford*, 17 Mass. R. 207 ; 1 Chitty's Gen. Pr. 180 ; that the northerly line of the land did **not**

extend beyond the southwest corner of Hunt's land, and that parol evidence was inadmissible to prove that it extended beyond that point, *Crosby* v. *Parker,* 4 Mass. R. 110 ; *Child* v. *Wells,* 13 Pick. 121 ; *Waterman* v. *Johnson,* 13 Pick. 261 ; that if the description in a deed comprehends several particulars, all of which are necessary to ascertain the land conveyed, they must all be proved, but if unnecessary particulars are added, which are not true, they will not vitiate the deed, *Worthington* v. *Hylyer,* 4 Mass. R. 196 ; Com. Dig. *Fait,* E 4 ; *Jackson* v. *Clark,* 7 Johns. R. 217.

*Bates* and *Huntington,* for the defendants, to the point, that it was the province of the jury to determine how far the land conveyed extended easterly, cited 1 Stark. on Ev. 429 ; *Sproat* v. *Matthews,* 1 T. R. 482 ; and that the *locus* was included by the description in the deed from the plaintiff to W. Edwards, *Ipswich, Petitioners,* 13 Pick. 431 ; *Keith* v. *Reynolds,* 3 Greenl. 393 ; *Tenny* v. *Beard,* 5 N. Hamp. R. 58.

W ᴸDE J. delivered the opinion of the Court. The defendants justify the trespass alleged in the writ, under a deed from the plaintiff to one William Edwards ; and the defence principally depends on the construction of that deed. The land thereby conveyed is described as bounded " westerly on the county road leading from Nathaniel Edwards's to Southampton ; northerly and southerly on land owned by Nathaniel Edwards ; and running easterly to Sheldon's corner, so called, on the lot of which the premises are a part, containing twelve acres and a half, more or less."

It was proved at the trial, that the land conveyed to William Edwards, according to the defendants' claim, was, at the time of the conveyance, in fact bounded northerly in part by the land of Nathaniel Edwards, and partly on the land of one Hunt ; and there was no evidence given to prove whether Nathaniel Edwards was, or was not, the owner of the land adjoining the granted premises, southerly.

And the plaintiff's counsel contend, on this evidence, that either the deed to William Edwards was void for uncertainty, or the northerly line of the lot conveyed should extend no further easterly than the lot of Nathaniel Edwards. It is very

clear, that the deed is not void for uncertainty ; for on any construction a part of the land claimed by the defendants would certainly pass. The only uncertainty, if there be any, in the description is, whether any land passed easterly of a line drawn from the southeasterly corner of Nathaniel Edwards's lot to Sheldon's corner. That there was a mistake in the description of the land intended to be conveyed, is very evident. But no mistake in the description of land conveyed, will vitiate the deed, if the description be sufficient to ascertain the land intended to be conveyed, although the land does not agree with some of the particulars in the description. *Worthington* v. *Hylyer*, 4 Mass. R. 196. Thus it frequently happens, that courses and distances do not agree with the monuments referred to ; and mistakes occur as to the ownership of the land on which the granted premises abut. In all such cases the courses and distances will be controlled by the monuments, and other mistakes will be disregarded, if the whole description be such as to ascertain the intention of the parties with reasonable certainty.

In the present case, we think the land conveyed to William Edwards is described with sufficient certainty. It is true that the northerly line or boundary is not fully and correctly described, and there is a considerable mistake as to the quantity of the land. But from other parts of the description we consider these mistakes immaterial, as, on the whole, there appears to be no reasonable doubt as to the estate intended to be conveyed.

To establish the southerly line of the lot claimed by the defendants, they proved, or offered evidence tending to prove, a known monument at Sheldon's corner ; and that Nathaniel Edwards soon after the deed to him from William Edwards in 1811, cleared and fenced the front part of the premises by the county road as far southerly as a line parallel with the northerly line of the lot, extended from Sheldon's corner to the road ; and then and subsequently cut trees standing promiscuously all over the *locus in quo* ; but there was no evidence given on either side tending to prove who was the owner of the land to the southward of that line. And the defendants relied upon the declaration of the grantor himself in his deed to William Edwards, that Nathaniel Edwards owned the land to the south-

ward of the premises. It is objected by the counsel for the plaintiff, that the description in the deed to William Edwards is no evidence to prove, that the line of Nathaniel Edwards's southerly lot coincided with the line to which the defendants claim. This objection would be well founded, if there had been no evidence *aliunde* to prove the location of the souther ly line of the defendants' lot. But as we consider the evidence as to Sheldon's corner, and the other evidence reported, as sufficient to authorize the jury to establish the defendants' southerly line, as claimed by them, the presumption arising from the language of the deed is, nothing appearing to the contrary, that Edwards was the owner of the lot adjoining. But without placing any reliance on this presumption, we think it clear, that the defendants' lot extends southerly to Sheldon's corner ; and that the long and undisturbed possession of the front part of the lot by Nathaniel Edwards and others claiming under William Edwards, is good presumptive proof of the true direction of the line from Sheldon's corner to the road. Indeed this line is impliedly admitted by the plaintiff's description of the *locus* in the writ, which is bounded westerly by land belonging to the heirs of Nathaniel Edwards. There has been no dispute as to the extent of the defendants' lot southerly. The only question has been as to its extent easterly ; that is, whether the northerly line is to terminate at the southwest or the southeast corner of Hunt's lot. To determine this question, the whole of the descriptive language of the deed is to be considered ; and if any inconsistency appears in any of the parts of the description, that part which the more certainly indicates the intention of the parties, and is the less liable to mistake and misconstruction, is to govern. The lot conveyed to William Edwards was bounded " northerly and southerly on land owned by Nathaniel Edwards ; and running easterly to Sheldon's corner." The latter part of the description, we think, was intended to indicate the extent of the lot easterly. The fair construction is, that the whole is to extend as far east as Sheldon's corner, or, in other words, to a line due north from that boundary. The northerly line of the lot; therefore, is to be extended until it intersects that line, although in part it was bounded by the land of Hunt. This omission to refer to

Clark
*v.*
Munyan.

Hunt's land, as abutting on the lot conveyed, may have been caused by mistake, or by ignorance of the fact, that Hunt was the owner of the land adjoining. But however this may be, the words added, as to the extent of the lot easterly, are not to be rejected, or the meaning of them to be controlled, by the defective description of the northerly line. There is no absolute and necessary inconsistency between the description of that line, and the description as to the extent of the lot easterly. The lot conveyed was bounded northerly by land of Nathaniel Edwards, though not in its full extent. If, however, there were any inconsistency, the language of the deed expressly defining the extent of the lot easterly, would render any mistake or falsity in the description of the northerly boundary ineffectual. Sheldon's corner was a known monument, and the lot is to run as far easterly as that monument, although this may be inconsistent with another part of the description.

This construction of the deed to William Edwards is confirmed by the parol evidence and the finding of the jury thereon. It was left to the jury to ascertain whether it was the intent of the parties to stop at Hunt's land, or to go on further to the eastward so as to include the *locus in quo.* That the case was properly so left, there can be no doubt. It was for the jury to decide whether Sheldon's corner had been proved, as to its locality, to their satisfaction ; and there was other parol evidence as to the extent of the lot easterly. The testimony of one of the plaintiff's witnesses had a tendency to prove, that the plaintiff, prior to 1818, ran out the easterly line of the defendants' lot and marked the trees in conformity to their present claim. The judge was not requested to give a particular construction of the language of the deed in this relation ; and if he had been and had refused, it would be immaterial, as the verdict of the jury is, in our opinion, conformable to the legal construction of the deed.

*Judgment upon the verdict.*